MICHAEL V. INFUSO, ESQ.
Nevada Bar No. 7380
MICHAEL A. KRISTOF, ESQ.
Nevada Bar No. 7780
**GREENE INFUSO, LLC**
**3030 S. Jones Blvd., Ste 101**
 Las Vegas, NV 89146
Phone: (702) 570-6000
Facsimile: (702) 436-8401
Attorneys for Plaintiffs

## UNITED STATE DISTRICT COURT
## DISTRICT OF NEVADA

ANGELA AUSTIN, individually; ANGELA
AUSTIN, as Trustee of THE ROBERT & INA
SNYDER TRUST; JOSEPH A. BERTOLINO, and
PAT BERTOLINO, individually and as husband
and wife; WILLIAM B. BURCH, individually;
JULIANA BURKLE, individually; LEONARD
CENATIEMPO and LORRAINE CENATIEMPO,
individually and as husband and wife; CAROL
CORBETT, individually; VELDA FOREMAN,
individually; JAMES R. FOSTER, individually;
RICHARD GALELLA, and PHYLLIS GALELLA,
individually and as husband and wife; GERI
GIBBONS, individually; ROBERT GLOVER, and
STEPHANIE GLOVER, individually and as
husband and wife; DOUG GOUGAR, individually
DOUG GOUGAR, as Trustee of THE GOUGAR
REVOCABLE LIVING TRUST; WARD
GUBLER, individually; THOMAS GWINN, and
MARILYN GWINN, individually and as husband
and wife; GARY S. HALL, individually; ORAN
BRADFORD HANSEN, individually; TAHNA
HASSING, individually; HAVEN
CHIROPRACTIC 401K PROFIT SHARING, a
California business entity; BRUCE JACKSON,
individually; TERRY JONES, individually;
WALLIS KEISLER, individually; NEIL KIRK,
individually; JOHN KROGH, individually; FRANK
MACCIOLA, and DOMENICA MACCIOLA,
individually and as husband and wife; FRANK
MACCIOLA, as Trustee of THE MACCIOLA
FAMILY TRUST; ANDREA MACCIOLA,
individually; THERESA MANZONE, individually;
ALFRED MCDANIELS, and CHERYL
MCDANIELS, individually and as husband and
wife; LARRY W. MCKAY, individually; ROBERT
MCMAHON, individually; LARRY F.
MCMASTERS, individually; JEANNIE MERRITT,
as Trustee of THE VIRGINIA M. LAWLER

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:

**COMPLAINT**

- 1 -

FAMILY TRUST; BRUCE MILLER, individually;  )
DONNA MILLER, individually; BRUCE MILLER  )
and DONNA MILLER, as Trustees of THE BRUCE )
& DONNA MILLER REVOCABLE TRUST; JAMI)
MILLER, individually; PHILLIP MILLER, and       )
JEANETTE MILLER, individually and as husband )
and wife; PAUL MITCHELL, individually; DORIS )
PARETSKY, individually; JACK PHILLIPS,           )
individually; SHEILA C. RAPP, individually;      )
LINDA L. RAYMOND, individually; BEVERLY )
RICE, individually; PHILLIP RIVALDO, and        )
JOSEPHINE RIVALDO, individually and as         )
husband and wife; FRANK ROMANS and TERRY )
ROMANS, individually and as husband and wife; )
ARNOLD ROSE, and REBECCA ROSE,              )
individually and as husband and wife; TONYA    )
RUSSELL, individually; JOANN SANDERS,          )
individually; EDMUND SCHLEGEL, and             )
MARJORIE SCHLEGEL, individually and as       )
Trustees of THE EDMUND & MARJORIE            )
SCHLEGEL REVOCABLE TRUST; MICHAEL D.)
SEXTON as Trustee of THE GERALD D. AND       )
MARLENE SEXTON REVOCABLE TRUST;          )
DAVID SILVA, individually; GARTH SINFIELD, )
individually; RALPH A. SMITH, individually;      )
THERESA M. SMITH, individually; PATRICIA     )
SPOON, individually; PAMELA SPRAGUE,          )
individually; NOREEN TABB-MARTIN,               )
individually; RICHARD S. TEH, individually;      )
STEVEN A. TREESE, individually; RUSSELL       )
TSCHANZ, and CYNTHIA TSCHANZ,                 )
individually and as husband and wife; SHARON  )
TUSS, individually; MARK VEIRS, individually;  )
GERALD VELASQUEZ, individually; MICHAEL )
VITA, as Legal Guardian of LOUIS A. VITA;       )
WHITNEY RANCH LIFE CAPITAL, LLC;           )
DONALD H. YEAMAN, and GLORIA K.              )
YEAMAN, as Trustees of THE DONALD H. AND )
GLORIA K. YEAMAN LIVING TRUST; CHUAN-)
WEN YU, as Trustee of THE YU FAMILY            )
TRUST; BRAD ZIEGLER; and MARK                 )
ZOHOVETZ, individually,                                    )
                                                                        )
                                                     Plaintiffs,)
                                                                        )
vs.                                                                    )
                                                                        )
LIFE PARTNERS, INC.; LIFE PARTNERS             )
HOLDINGS, INC.;  DOE INDIVIDUALS 1-100,      )
and ROE CORPORATIONS 1-100 inclusive,          )
                                                                        )
                                                    Defendants.)
_____)

- 2 -

## COMPLAINT

Plaintiffs, by and through their attorney of record, BRANDON J. SQUIRES, ESQ., and MICHAEL V. INFUSO, ESQ., and MICHAEL A. KRISTOF, ESQ. of GREENE INFUSO, LLP., complain against Defendants as follows:

## GENERAL ALLEGATIONS

## PARTIES

1.      That Plaintiff ANGELA AUSTIN is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

2.      That Plaintiff ANGELA AUSTIN, as Trustee of the ROBERT & INA SNYDER TRUST, is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

3.      That Plaintiffs JOSEPH A. BERTOLINO and PAT BERTOLINO are and, at all times mentioned herein, were residents of the County of Washoe, State of Nevada.

4.      That Plaintiff WILLIAM B. BURCH is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

5.      That Plaintiff JULIANA BURKLE is and, at all times mentioned herein, was a resident of the County of Washoe, State of Nevada.

6.      That Plaintiffs LEONARD CENATIEMPO and LORRAINE CENATIEMPO are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

7.      That Plaintiff CAROL CORBETT is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

8.      That Plaintiff VELDA FOREMAN is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

9.      That Plaintiff JAMES R. FOSTER is and, at all times mentioned herein, was a resident of the County of Lyon, State of Nevada.

10.      That Plaintiffs RICHARD GALELLA and PHYLLIS GALELLA are and, at all

times mentioned herein, were residents of the County of Clark, State of Nevada.

11.     That Plaintiff GERI GIBBONS is and, at all times mentioned herein, was a resident of the County of Lyon, State of Nevada.

12.     That Plaintiffs ROBERT GLOVER and STEPHANIE GLOVER are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

13.     That Plaintiff DOUG GOUGAR is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

14.     That Plaintiff DOUG GOUGAR, as Trustee of THE GOUGAR REVOCABLE LIVING TRUST, is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

15.     That Plaintiff WARD GUBLER is and, at all times mentioned herein, was a resident of the County of Washington, State of Utah.

16.     That Plaintiffs THOMAS GWINN and MARILYN GWINN are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

17.     That Plaintiff GARY S. HALL is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

18.     That Plaintiff ORAN BRADFORD HANSEN is and, at all times mentioned herein, was a resident of the County of Cassia, State of Idaho.

19.     That Plaintiff TAHNA HASSING is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

20.     HAVEN CHIROPRACTIC 401K PROFIT SHARING, a California Business Entity, is and, at all times mentioned herein was a business entity organized under the laws of the County of San Bernardino, State of California.

21.     That Plaintiff BRUCE JACKSON is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

22.     That Plaintiff TERRY JONES is and, at all times mentioned herein, was a

- 4 -

resident of the County of Clark, State of Nevada.

23.     That Plaintiff WALLIS KEISLER is and, at all times mentioned herein, was a resident of the County of Sumner, State of Tennessee.

24.     That Plaintiff NEIL KIRK is and, at all times mentioned herein, was a resident of the County of Maricopa, State of Arizona.

25.     That Plaintiff JOHN KROGH is and, at all times mentioned herein, was a resident of the County of Utah, State of Utah.

26.     That Plaintiffs FRANK MACCIOLA and DOMENICA MACCIOLA are and, at all times mentioned herein, were residents of the County of Los Angeles, State of California.

27.     That Plaintiff FRANK MACCIOLA, as Trustee of the FRANK AND DOMENICA MACCIOLA FAMILY TRUST, is and, at all times mentioned herein was a resident of the County of Clark, State of Nevada.

28.     That Plaintiff ANDREA MACCIOLA is and, at all times mentioned herein, was a resident of the County of Los Angeles, State of California.

29.     That Plaintiff THERESA MANZONE is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

30.     That Plaintiffs ALFRED MCDANIELS and CHERYL MCDANIELS are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

31.     That Plaintiff LARRY W. MCKAY is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

32.     That Plaintiff ROBERT MCMAHON is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

33.     That Plaintiff LARRY F. MCMASTERS is and, at all times mentioned herein, was a resident of the County of Pershing, State of Nevada.

34.     That Plaintiff JEANNIE MERRITT, as Trustee of THE VIRGINIA M. LAWLER FAMILY TRUST is and, at all times mentioned herein, was a resident of the County

of Delaware, State of Ohio.

35.     That Plaintiff BRUCE MILLER is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

36.     That Plaintiff DONNA MILLER is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

37.     That Plaintiffs BRUCE MILLER and DONNA MILLER, as Trustees of THE BRUCE & DONNA MILLER REVOCABLE TRUST are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

38.     That Plaintiff JAMI MILLER is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

39.     That Plaintiff PHILLIP MILLER and JEANETTE MILLER are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

40.     That Plaintiff PAUL MITCHELL is and, at all times mentioned herein, was a resident of the County of Pershing, State of Nevada.

41.     That Plaintiff DORIS PARETSKY is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

42.     That Plaintiff JACK PHILLIPS is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

43.     That Plaintiff SHEILA C. RAPP is and, at all times mentioned herein, was a resident of the County of Los Angeles, State of California.

44.     That Plaintiff LINDA L. RAYMOND is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

45.     That Plaintiff BEVERLY RICE is and, at all times mentioned herein, was a resident of the County of Orange, State of California.

46.     That Plaintiffs PHILLIP RIVALDO and JOSEPHINE RIVALDO are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

47.     That Plaintiffs FRANK ROMANS and TERRY ROMANS are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

48.     That Plaintiffs ARNOLD ROSE and REBECCA ROSE are and, at all times mentioned herein were, residents of the County of Clark, State of Nevada.

49.     That Plaintiff TANYA RUSSELL is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

50.     That Plaintiff JOANN SANDERS is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

51.     That Plaintiffs EDMUND SCHLEGEL and MARJORIE SCHLEGEL, as Trustees of THE EDMUND & MARJORIE SCHLEGEL REVOCABLE TRUST are and, at all times mentioned herein, were residents of the County of Orange, State of California.

52.     That Plaintiff MICHAEL D. SEXTON, as Trustee of THE GERALD D. AND MARLENE SEXTON REVOCABLE TRUST is and, at all time mentioned herein, was a resident of the County of Clark, State of Nevada.

53.     That Plaintiff DAVID SILVA is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

54.     That Plaintiff GARTH SINFIELD is and, at all times mentioned herein, was a resident of the County of White Pine, State of Nevada.

55.     That Plaintiff RALPH A. SMITH is and, at all times mentioned herein, was a resident of the County of Douglas, State of Nevada.

56.     That Plaintiff THERESA M. SMITH is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

57.     That Plaintiff PATRICIA SPOON is and, at all times mentioned herein was, a resident of the County of Washoe, State of Nevada.

58.     That Plaintiff PAMELA SPRAGUE is and, at all times mentioned herein, was a resident of the County of Canyon, State of Idaho.

59.     That Plaintiff NOREEN TABB-MARTIN is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

60.     That Plaintiff RICHARD TEH is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

61.     That Plaintiff STEVEN A. TREESE is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

62.     That Plaintiffs RUSSELL TSCHANZ and CYNTHIA TSCHANZ are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

63.     That Plaintiff SHARON TUSS is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

64.     That Plaintiff MARK VEIRS is and, at all times mentioned herein, was a resident of the County of San Bernardino, State of California.

65.     That Plaintiff GERALD VELASQUEZ is and, at all time mentioned herein, was a resident of the County of Clark, State of Nevada.

66.     That Plaintiff MICHAEL VITA, as Legal Guardian of LOUIS A. VITA is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

67.     That Plaintiff WHITNEY RANCH LIFE CAPITAL, LLC is and, at all times mentioned herein, was a Nevada Limited Liability Company, and was authorized to conduct business in the County of Clark, State of Nevada.

68.     That Plaintiffs DONALD H. YEAMAN, and GLORIA K. YEAMAN, as Trustees of THE DONALD H. AND GLORIA K. YEAMAN LIVING TRUST are and, at all times mentioned herein, were residents of the County of Clark, State of Nevada.

69.     That Plaintiff CHUAN-WEN YU, as Trustee of THE YU FAMILY TRUST is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

70.     That Plaintiff BRAD ZIEGLER is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

71.     That Plaintiff MARK ZOHOVETZ is and, at all times mentioned herein, was a resident of the County of Clark, State of Nevada.

72.     That Defendant LIFE PARTNERS, INC., (hereafter collectively referred to as "LPI" and/or "LPHI") is and, at all times mentioned herein, was a Texas Corporation, authorized to conduct business in the County of McLennan.

73.     That Defendant LIFE PARTNERS HOLDINGS, INC., (hereafter collectively referred to as "LPHI" and/or "LPI") is and, at all times mentioned herein, was a Texas Corporation, authorized to conduct business in the County of McLennan.

74.     That the true names and capacities of the Defendants designated herein as DOE individuals or ROE corporations, are presently unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names.  That Defendants identified as DOES and ROES includes DOES or ROES who calculated life expectancies for LPI, its agents, or subsidiaries, DOES or ROES who marketed and/or brokered viatical settlement investments for LPI, its agents or subsidiaries, DOES or ROES who calculated the rate of return on viatical settlement investments brokered by LPI, its agents, or subsidiaries, DOES or ROES who designed, created, produced, or assisted in, the design, creation, or production of LPI's advertisements for its viatical settlement investments, and any and all DOES or ROES who damaged, or proximately caused or contributed to Plaintiffs' damages in any way.  When the true names and capacities of these defendants are ascertained, Plaintiffs will amend this Complaint accordingly.

75.     That at all times pertinent, Defendants were agents, servants, employees or joint venturers of every other Defendant herein and, at all times mentioned herein, were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants.

76.     That all Plaintiffs to this action invested in viatical settlement investments brokered by LPI through its subsidiary LPHI.

## JURISDICTION AND VENUE

77.     Plaintiffs incorporate and reiterate paragraphs 1 through 76 of the Complaint as though said paragraphs were fully set forth herein.

78.     That there is complete diversity amongst the Plaintiff's and the Defendants in this matter.

79.     That the amount in controversy is in excess of $75,000.

80.     That this Court has jurisdiction pursuant to 28 U.S.C. Section 1332 – Diversity Jurisdiction.

81.     Venue is proper in this District under the provisions of 28 U.S.C. Section 1391 because LPI solicits customers, transacts business, enters into contracts, and is alleged to commit torts and cause economic injury within this District.   Those alleged actions are the subject of this suit.

### LPI'S AND LPHI'S BROKERAGE OF VIATICAL SETTLEMENTS

82.     Plaintiffs incorporate and reiterate paragraphs 1 through 81 of the Complaint as though said paragraphs were fully set forth herein.

83.     That LPI, through its subsidiary LPHI, advertises, markets, and arranges for the brokerage of viatical settlement investments to prospective investors.

84.     That a viatical settlement is a transaction whereby a terminally-ill person (hereafter a "viator"), who has a life insurance policy, transfers the death benefit of the life insurance policy to a third party in exchange for a lump sum payment.

85.     That where the death benefit of a life insurance policy has been transferred to a third party in exchange for a lump sum payment, the life insurance policy is referred to as a "viaticated policy."

86.     That Defendants market these viatical settlements to prospective investors throughout the United States, including Nevada.

87.     That when an investor decides to purchase a viatical settlement, they enter into a Funding Agreement and/or an Agency Agreement and Special Power of Attorney with

Defendant LPI (hereinafter collectively "Agreement").

88.    That the Agreement creates an agency relationship with Defendant LPI as agent, and the investor as the principal.

89.    That Defendant LPI, as part of the Agreement, agrees to identify and assist in the purchase, for the principal, life insurance policies and/or related death benefits.

90.    That, among other things, LPI's criteria for determining whether a given life insurance policy was "acceptable for investment" as articulated by the Agreement, included a determination regarding whether the prospective viator had a probable life expectancy of between six and forty eight months

91.    That investors who purchase a fractional interest in viatical settlements anticipate receiving a return on their investment when the viator dies.

92.    That, as part of the process of arranging and brokering viatical settlements, LPI, through its subsidiary LPHI, obtains life expectancy projections for viators, which it then presents to prospective investors.

93.    That Plaintiffs relied upon viators' life expectancy projections, which LPI provided through its subsidiary LPHI, when determining the value of a given viatical settlement investment.

94.    That a viator's projected life expectancy directly affects the value of a viatical settlement investment because it determines the estimated length of time until the investor receives the anticipated return on investment.

95.    That a viatical settlement investment is more valuable where a viator has a shorter life expectancy because the death benefit will mature more quickly.

96.    That, accordingly, investors are willing to pay a higher price in relationship to anticipated return for viatical settlement investments where the viator has a shorter life expectancy.

97.    That, conversely, if a viator's life expectancy is underestimated, the value of the

investment decreases because, by and among other things, the payment of the death benefit is delayed, thus diminishing the time-value of the investment. In addition, the investor may be asked to invest additional funds in escrow in order for the policy premiums to be paid, thus making sure the policy does not lapse.

98.     The investors, although they may be informed that they may in the future have to pay additional funds in escrow to maintain the life insurance policy/death benefits that they have purchased from LPI, are never told how much they will be asked to pay or told how long they may have to pay said premiums into escrow.

99.     That Plaintiffs, as investors in viatical settlements brokered by LPI, reasonably relied upon LPI's life expectancy projections, as provided to LPI by Dr. Cassidy, in estimating the value of the viatical settlement investments they purchased and determining whether or not to purchase the viatical settlement investment.

**LPI'S SYSTEMATIC AND FRAUDULENT UNDERESTIMATION OF VIATORS' LIFE EXPECTANCIES IN ITS ATTEMPT TO INDUCE INVESTORS TO PURCHASE VIATICAL SETTLEMENTS**

100.    Plaintiffs incorporate and reiterate paragraphs 1 through 99 of the Complaint as though said paragraphs were fully set forth herein.

101.    That, since approximately 2002, Dr. Donald T. Cassidy, an oncologist in Reno, Nevada, who operates as DONALD T. CASSIDY, M.D., LTD., a Nevada Domestic Professional Corporation (hereafter "Dr. Cassidy") has provided LPI with all of its life expectancy projections.[1]

102.    That LPI pays Dr. Cassidy a monthly retainer of $15,000.00 and an additional fee of $500.00 per life expectancy projection on policies that LPI actually purchases.[2]  Thus, there is a direct financial incentive to Dr. Cassidy to make sure his life expectancy projections fall within Defendants' definition of what is an "acceptable" policy to purchase on behalf of its

---

[1] See Wall Street Journal Article, "Odds Skew Against Investors in Bets on Stranger's Lives," at p. 3, attached as Exhibit A.
[2] See id.

- 12 -

investors.

103.    That, upon information and belief, a doctor who prepares life expectancy projections, by industry standards, can only accurately and reasonably produce an average of six life expectancy estimates per day.[3]

104.    That Dr. Donald Cassidy performs an average of 100 to 200 life expectancy projections per week, at an average daily rate of 33 to 66 life expectancy projections per day.[4]

105.    That LPI has known and has admitted that Dr. Cassidy's projections regarding life expectancy have been inaccurate a majority of the time in that the viators have consistently outlived the life expectancy projections put forth by Dr. Cassidy.

106.    That LPI, using Dr. Cassidy's projections systematically and fraudulently underestimated viators' life expectancies.

107.    That LPI has systematically withheld and/or failed to disclose to investors the average rate at which viators outlive LPI's life expectancy projections.[5]

108.    That LPI's and Dr. Cassidy's practice of systematically underestimating viators' life expectancies is demonstrated by the fact that LPI's life expectancy projections are correct only 6.8 percent of the time, or at an average of slightly more than 1 in 20 life expectancy projections.[6]

109.    That, if life expectancy calculations are performed correctly for a given group of people, 50 percent, or half, of the group will die within their projected life expectancy.[7]

110.    That, conversely, LPI's life expectancy projections, performed by Dr. Cassidy, have proven incorrect nearly 95 percent of the time, or, in other words, LPI's life expectancy calculations have been incorrect in an average of slightly less than 19 out of 20 life expectancy

---

[3] See id.
[4] See id.
[5] See generally id.
[6] See id. at p. 1.

[7] See id.

projections.[8]

111.   The majority of the terminally-ill people, whose life insurance policies LPI purchased since 2002 are still alive, and many of those individuals have lived 2 to 3 times longer than LPI projected.[9]

112.   That Dr. Cassidy has admitted that he does not check the accuracy of his own predictions.[10]

113.   That Brian Pardo, LPI's Chief Executive Officer, has admitted that "Dr. Cassidy's projections are largely far less than accurate."[11]

114.   That LPI has continued to use Dr. Cassidy's life expectancy projections in calculating the value of its viatical settlement investments, even though LPI knows that Dr. Cassidy's projections are incorrect 93.8 percent of the time.

## LPI'S DECEPTIVE AND MISLEADING ADVERTISING REGARDING THE RATE OF RETURN ON INVESTMENT

115.   Plaintiffs incorporate and reiterate paragraphs 1 through 114 of the Complaint as though said paragraphs were fully set forth herein.

116.   That LPI exaggerated the average rate of return that investors could expect to receive by emphasizing that the average annualized return on investment on matured policies was 16.57 percent.[12]

117.   That LPI withheld information from prospective investors regarding the average return on the approximately 95 percent of viatical settlement investments where the death benefit did not mature within the viator's projected life expectancy.

118.   That by withholding information regarding the average rate of return for the 95 percent of investments where LPI underestimated the life expectancy, LPI willfully and

---

[8] See id.
[9] See generally id.
[10] See id. at p. 3.
[11] See id.
[12] See LPI brochure advertising viatical settlement investments, attached as Exhibit B.

deliberately concealed material facts from prospective investors.

119.    That, in advertising viatical settlement investments, Defendants used certain language which is deemed to be false and misleading on its face, and which is prohibited by Nevada Revised Statute (hereafter "NRS") 688C.380(7), including, "Policies are issued by some of America's oldest and most financially sound life insurance companies," "Potential for Superior Yields," "Reduction of Risk," "exceptional returns," and "low risk."[13]

## LPI'S AND LPHI'S NON-DISCLOSURE OF THE REQUIREMENT THAT INVESTORS PAY VIATORS' LIFE INSURANCE PREMIUMS

120.    Plaintiffs incorporate and reiterate paragraphs 1 through 119 of the Complaint as though said paragraphs were fully set forth herein.

121.    That, out of the money LPI collects from investors, LPI purchases the death benefit from the terminally-ill person, pays its own brokerage fees, and funds an escrow account out of which viator's life insurance policy premiums are paid.

122.    That LPI funds the escrow account for the payment of life insurance premiums up through one year after the expiration of LPI's life expectancy projection for the particular viator.

123.    That where a viator lives more than a year beyond LPI's life expectancy projection, the investors who purchased the fractional interests in the viatical settlement are being required by LPI to pay the life insurance policy premiums on the viaticated life insurance policy.

124.    That, in some cases, LPI failed to disclose and/or deliberately withheld information from investors regarding the fact that investors would be required to pay the underlying life insurance policy premiums if the terminally-ill person lived beyond LPI's projected life expectancy.

125.    That the amount of the life insurance premiums, and the frequency with which the policy premiums would be payable, was information which was essential for analysis

---

[13] See generally id.

- 15 -

regarding the value of, and the risks associated with, purchasing a given viatical settlement investment.

126.   That, in addition to withholding the information regarding the rate at which viators outlived LPI's life expectancy projections, LPI systematically withheld and/or failed to disclose to investors the amount of the policy premiums which investors would be required to pay, or the frequency with which such premiums would be payable, if the viator lived more than a year beyond LPI's projected life expectancy.

127.   That by withholding and/or failing to disclose information regarding the frequency and amount of the policy premiums which investors would be required to pay following the expiration of LPI's life expectancy projection, LPI misrepresented and/or withheld material facts from its investors regarding the value of, cost of, and risks associated with, viatical settlement investments.

## FIRST CAUSE OF ACTION—FRAUDULENT MISREPRESENTATION
### (All Defendants)

128.   Plaintiffs incorporate and reiterate paragraphs 1 through 127 of the Complaint as though said paragraphs were fully set forth herein.

129.   That LPI and LPHI, knowingly communicated Dr. Cassidy's false representations of material fact, regarding viators' life expectancy projections, to prospective investors.

130.   That Defendants knew that the life expectancy projections they provided to Plaintiffs herein were false, or knew that they had an insufficient basis for making the representation

131.   That Defendants LPI and LPHI also made false representations of material fact concerning the rate of return on viatical settlement investments.

132.   That, specifically, LPI represented that investors could expect an average annualized return on investment of 16.57 percent on actual payouts where the viator died within LPI's projected life expectancy; however, LPI deliberately withheld information regarding the

- 16 -

average annualized return on investment for all viatical settlement investments, including the return on investment for viatical settlements were dramatically lower than the advertised 16.57 percent rate of return on investment.[14]

133.   That Defendants LPI and LPHI knew that the advertisements, which represented that prospective investors could expect to receive 16.57 percent as the annual rate of return on viatical settlement investments, were false and misleading.

134.   That, by both systematically underestimating viators' life expectancy projections, and by misrepresenting the average annualized rate of return on viatical settlement investments, Defendants intended to, and did in fact, induce Plaintiffs to purchase viatical settlement investments at inflated prices.

135.   That Plaintiffs justifiably believed, relied upon, and expected that LPI would accurately estimate viator's life expectancies, would disclose the rate at which viators outlived LPI's life expectancy projections, and would fairly and accurately represent the rate of return on viatical settlement investments as a whole.

136.   That Plaintiffs justifiably believed, relied upon, and expected that LPI would use life expectancy calculations or life expectancy projections that were reasonably accurate or, in the alternative, not substantially flawed or falsified.

137.   That Plaintiffs have suffered damages in the form of loss of economic use of the principal invested, lost anticipated return on investments, loss in the time-value of their investments, loss of other investment opportunities, and the loss of additional pecuniary resources associated with being required to pay the policy premiums after the viators exceeded LPI's life expectancy projections.

138.   That the actions or omissions of Defendants, as plead in the entirety of this Complaint, were fraudulent, oppressive, and were made in conscious disregard of Plaintiffs' pecuniary interests and, therefore, an award of punitive damages is appropriate in an amount to

---

[14] See generally Exhibit B.

- 17 -

be determined at trial.

139.   That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

### SECOND CAUSE OF ACTION—BREACH OF FIDUCIARY DUTY
(All Defendants)

140.   Plaintiffs incorporate and reiterate paragraphs 1 through 139 of the Complaint as though said paragraphs were fully set forth herein.

141.   That Defendants owed Plaintiffs a fiduciary duty to provide Plaintiffs with accurate and reliable information regarding viators' life expectancies, and the average annualized rate of return on viatical settlement investments.

142.   That Defendants breached their fiduciary duty to Plaintiffs by providing them with information regarding viators' life expectancies, and the average annualized rate of return on investment that Defendants knew, or reasonably should have known was false, misleading, and deceptive.

143.   That, as a result of Defendants breach of their fiduciary duty, Plaintiffs have suffered damages in the form of loss of use of economic use of the principal invested, lost anticipated return on investments, loss in the time-value of their investments, loss of other investment opportunities, and the loss of additional pecuniary resources associated with being required to pay the policy premiums after the viators exceeded LPI's life expectancy projections.

144.   That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

**THIRD CAUSE OF ACTION—BREACH OF THE IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING (CONTRACTUAL BREACH)**
(All Defendants)

145.    Plaintiffs incorporate and reiterate paragraphs 1 through 143 of the Complaint as though said paragraphs were fully set forth herein.

146.    Plaintiffs, and Defendants LPI and LPHI were parties to a contract memorialized by a document entitled Agency Agreement and/or Special Power of Attorney as well as a Policy Funding Agreement.

147.    That there is implied in all contracts a covenant of good faith and fair dealing.

148.    That Defendants LPI and LPHI owed Plaintiffs an implied duty, arising out of the Agency Agreement and/or Special Power of Attorney as well as the "Policy Funding Agreement" to act in good faith, and deal fairly with Plaintiffs.

149.    Defendants LPI and LPHI breached their implied duty of good faith and fair dealing to Plaintiffs, arising out of the various by, and among other ways, fraudulently and systematically underestimating the viators' life expectancies, by failing to disclose to investors the rate at which viators outlived LPI's life expectancy projections, and by misrepresenting the average annualized rate of return which LPI investors could expect to receive on viatical settlement investments.

150.    That, accordingly, Plaintiffs' justified expectations that LPI would accurately estimate viators' life expectancies, would disclose the rate at which viators outlived LPI's life expectancy projections, and would fairly and accurately represent the average annualized rate of return on viatical settlement investments, were thus denied.

151.    That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

**FOURTH CAUSE OF ACTION—BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING (TORTIOUS BREACH)**
(All Defendants)

152.    Plaintiffs incorporate and reiterate the allegations contained in paragraphs 1 through 151 as if fully set forth herein.

- 19 -

153.    That Plaintiffs and Defendants LPI and LPHI entered into a contract memorialized by Agency Agreement and/or Special Power of Attorney as well as the "Policy Funding Agreement."

154.    That every contract carries with it an implied duty of good faith and fair dealing.

155.    That Defendants LPI and LPHI owed Plaintiffs an implied duty, arising out of the Agreements to act in good faith, and deal fairly with Plaintiffs.

156.    That, as a broker of viatical settlement investments, LPI, acting through its subsidiary LPHI, was in a superior, trusted position because it had information regarding the accuracy of its life expectancy projections, knew the rate at which viators outlived its life expectancy projections and by how long, and knew the overall average rate of return that investors could expect to receive on their viatical settlement investments.

157.    That Plaintiffs reasonably and justifiably relied on Defendants LPI and LPHI to provide accurate life expectancy projections, to disclose the rate at which viators outlived LPI's life expectancy projections, and to fairly and honestly represent that overall rate of return that investors could expect to receive on their viatical settlement investments.

158.    That Defendants LPI and LPHI breached their implied duty of good faith and fair dealing to Plaintiffs by fraudulently and systematically underestimating the life expectancy of the viators, by failing to disclose to investors the rate at which the insureds outlived LPI's life expectancy projections, and by misrepresenting the average rate of return which LPI investors could expect to receive on their investments.

159.    That Plaintiffs have suffered damages in the form of loss of economic use of the principal invested, lost anticipated return on investments, loss in the time-value of their investments, loss of other investment opportunities, and the loss of additional pecuniary resources associated with being required to pay the policy premiums after the viators exceeded LPI's life expectancy projections.

160.    That Plaintiffs have been required to engage the services of an attorney,

incurring attorney's fees and costs to bring this action.

### FIFTH CAUSE OF ACTION – VIOLATION OF NEVADA'S VIATICAL SETTLEMENTS STATUES – NRS 688C ET SEQ.
(All Defendants)

161.    Plaintiffs incorporate paragraphs 1 through 160 of the Complaint as though said paragraphs were fully set forth herein.

162.    The acts of Defendants as complained of herein constitute a violation(s) of NRS 688C et seq.- Viatical Settlements.

163.    Specifically, Defendants conducted violate, among other provisions, NRS 688C.380 in that Defendants provided false and misleading advertising to the Plaintiffs regarding the viatical settlements.

164.    Pursuant to NRS 688C.510, Plaintiffs are entitled to rescission of the contract.

165.    That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

### SIXTH CAUSE OF ACTION – VIOLATION OF NEVADA'S DECEPTIVE TRADE PRACTICES ACT NRS 598 ET SEQ.
(All Defendants)

166.    Plaintiffs incorporate and reiterate paragraphs 1 through 165 of the Complaint as though said paragraphs were fully set forth herein.

167.    The acts of Defendants herein constitute a violation of Nevada's Deceptive Trade Practices Act- NRS 598 et seq.

168.    Specifically, the acts complained of within the Complaint constitute a violation of NRS 598.092(5)(b), (c), and subsection (8).

169.    That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

### SEVENTH CAUSE OF ACTION- RESCISSION
(All Defendants)

170.    Plaintiffs incorporate and reiterate paragraphs 1 through 169 of the Complaint as though said paragraphs were fully set forth herein.

171.   Defendants' actions complained of herein prevented a meeting of the minds between Plaintiffs and Defendants regarding the terms of the contract between the respective parties.

172.   Defendants actions complained of herein constitute fraud in the inducement against the Plaintiffs.

173.   Defendants actions constitute violation of Nevada Statues regarding Viatical Statutes and Deceptive Trade Practices.

174.   Plaintiffs are entitled to a judgment of rescission of their agreements between themselves and Defendants.

175.   That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

## EIGHTH CAUSE OF ACTION – BREACH OF CONTRACT
### (All Defendants)

176.   Plaintiffs incorporate and reiterate paragraphs 1 through 175 of the Complaint as though said paragraphs were fully set forth herein.

177.   Should the Court find that a contract was formed between Plaintiffs and Defendants, then Defendants actions as described herein constitute a breach of the contract by Defendants.

178.   That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

## NINTH CAUSE OF ACTION – UNJUST ENRICHEMENT
### (All Defendants)

179.   Plaintiffs incorporate and reiterate paragraphs 1 through 178 of the Complaint as though said paragraphs were fully set forth herein.

180.   That Defendants acts as described herein have lead to unjust enrichment on behalf of the Defendants.

181.   As a result of its misrepresentations, LPI sold policies to Plaintiffs at inflated

prices, and earned money and fees that were unreasonable, and that equity and good conscious demand be disgorged from Defendants, and restored to Plaintiffs.

182.    Defendants are aware that it has received these benefits.

183.    Defendants received these benefits to the detriment of Plaintiffs.

184.    That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

## TENTH CAUSE OF ACTION – FRAUD IN THE INDUCEMENT
### (All Defendants)

185.    Plaintiffs incorporate and reiterate paragraphs 1 through 184 of the Complaint as though said paragraphs were fully set forth herein.

186.    Defendants willfully withheld information from the Plaintiff's that would have allowed them fairly and accurately determine the risks involved with the purchase of the viatical settlements at issue herein.

187.    That Defendants purposefully withheld information from the Plaintiffs that demonstrated Dr. Cassidy fraudulently and systematically underestimated the viators' life expectancy projections.

188.    That upon information and belief, the Defendants actually kept two sets of books regarding projected life expectancy, one from Dr. Cassidy which was shown to Plaintiffs, and one that was used internally by Defendants which would demonstrate that Dr. Cassidy fraudulently and systematically underestimated the viators' life expectancy projections.

189.    Defendants withheld the rate at which Dr. Cassidy's life expectancy projections were wrong, as well as the other life expectancy projections done by a source other than Dr. Cassidy in an attempt to induce Plaintiffs to purchase the viatical settlements Defendants were trying to sell.

190.    Plaintiffs, through Defendants' fraud, did purchase the viatical settlements put forth to them by the Defendants.

191.    Plaintiffs have been harmed by Defendants fraudulent inducement of Plaintiffs.

192.    That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

### ELEVENTH CAUSE OF ACTION- NEGLIGENCE PER SE
(All Defendants)

193.    Plaintiffs incorporate and reiterate paragraphs 1 through 192 of the Complaint as though said paragraphs were fully set forth herein.

194.    Defendants' actions as plead herein constitute a violation of NRS 688C et seq.- Viatical Settlements.

195.    Plaintiffs are within the class of persons meant to be protected by NRS 688C et seq- Viatical Settlements.

196.    The harms committed by the Defendants are the type of harms which the statute is meant to protect Plaintiffs against.

197.    That Plaintiffs have been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action.

**WHEREFORE**, Plaintiffs, expressly reserving the right to amend this Complaint prior to or at the time of trial of this action, to insert those items of damage not yet fully ascertainable, pray judgment against the Defendants and each of them as follows:

1.    For special damages sustained by Plaintiffs in an amount in excess of $75,000;

2.    For general damages sustained by Plaintiffs;

3.    For punitive damages;

4.    For reasonable attorney's fees and costs of suit;

5.    For rescission of the agreements between Plaintiffs and Defendants;

6.    For return of all moneys Plaintiff has paid to Defendants or their agents;

7.    Pre-judgment, and post-judgment interest at the statutory rate;

8.    For all damages available under the applicable statutory schemes that Defendants may be found to have violated, including but not limited to treble damages, consequential damages, and disgorgement of profits; and

9.    For such other relief as the Court deems just and proper.

DATED this _____ day of November, 2011.

GREENE INFUSO, LLC


MICHAEL V. INFUSO
Nevada Bar No. 7380
MICHAEL A. KRISTOF
Nevada Bar No. 7780
3030 S. Jones Blvd., Ste 101
Las Vegas, NV 89146
Attorneys for Plaintiffs

- 25 -