UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANGELA AUSTIN, et al., | |
| Plaintiffs, | 2:11-cv-01767-PMP-GWF |
| v. | |
| LIFE PARTNERS, INC. and LIFE PARTNERS HOLDINGS, INC., | ORDER |
| Defendants. | |

Presently before the Court is Defendants' Motion to Dismiss (Doc. #47), filed on May 31, 2012. Plaintiffs filed an Opposition (Doc. #52) on July 13, 2012. Defendants filed a Reply (Doc. #54) on July 23, 2012. The Court held a hearing on this Motion on October 25, 2012. (Mins. of Proceedings (Doc. #59).)

**I. BACKGROUND**

This action arises out of Plaintiffs' purchase of viatical settlements through Defendant Life Partners, Inc. ("LPI"). Plaintiffs allege LPI misrepresented the average rate of return of the investments. Plaintiffs also allege LPI failed to disclose that LPI obtained its life expectancy projections used to evaluate the suitability of the investments from a doctor, Dr. Cassidy, who was on LPI's payroll and who LPI knew historically had rendered inaccurate projections over ninety percent of the time. According to the Complaint, LPI also failed to disclose that if the viator outlived the life expectancy projection, investors would have to invest more funds to pay future premiums, and LPI failed to disclose the

amount and frequency of those payments.  Finally, Plaintiffs allege LPI used misleading terms in its advertising which Nevada law specifically prohibits.

Plaintiffs bring this action asserting against LPI and Life Partners Holdings, Inc. ("LPHI") claims for fraudulent misrepresentation (count one), breach of fiduciary duty (count two), breach of the implied covenant of good faith and fair dealing (count three), tortious breach of the implied covenant of good faith and fair dealing (count four), violation of Nevada's viatical settlement statutes (count five), violation of Nevada's Deceptive Trade Practices Act (count six), rescission (count seven), breach of contract (count eight), unjust enrichment (count nine), fraud in the inducement (count ten), and negligence per se (count eleven).  Defendants now move to dismiss or to transfer the case to Texas.  Plaintiffs oppose dismissal and transfer.

**II. DISCUSSION**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).  However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v Twombly, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 555.

**A. Standing/Ripeness**

Plaintiffs adequately have alleged they have standing and their claims are ripe. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); Addington v. U.S. Airline Pilots

1   Ass'n, 606 F.3d 1174, 1179 (9th Cir 2010). Plaintiffs have alleged that a shorter life
2   expectancy raises the cost of an investment in a viatical settlement, that Dr. Cassidy
3   overwhelmingly underestimated life expectancies, and that LPI overstated the average rate
4   of return. Plaintiffs contend LPI fraudulently induced them to enter into the contracts, and
5   Plaintiffs paid more than the investments were worth, because LPI advertised a false rate of
6   return and LPI failed to disclose material facts about the life expectancy projections.
7   Taking Plaintiffs' allegations as true, Plaintiffs lost economic use of the principal,
8   anticipated returns, the time-value of their money, and investment opportunities. Plaintiffs'
9   claims are not based on the fact that viators have outlived LPI's life expectancy projections.
10  Rather, Plaintiffs allege LPI misrepresented and failed to disclose material information
11  about the investment to Plaintiffs' detriment. The Court therefore will deny Defendants'
12  motion to the extent it is based on lack of standing or ripeness.

13  **B. LPHI**

14  Plaintiffs concede that because LPHI is not a party to the contracts, dismissal of
15  Plaintiffs' contract claims as to LPHI is appropriate. The Court also will dismiss the tort
16  claims against LPHI because Plaintiffs have not alleged any acts taken by LPHI other than
17  in conclusory fashion and by lumping Defendants together. See Swartz v. KPMG, LLP,
18  476 F.3d 756, 764-65 (9th Cir. 2007). Dismissal of the tort claims is without prejudice to
19  amend to plead facts specific to LPHI.

20  **C. Choice of Law**

21  The parties agree Texas law applies to the Funding Agreements. As for the
22  Agency Agreements and the tort claims, the Court will apply Nevada law at this stage of the
23  proceedings. See Gen. Motors Corp. v. Eighth Judicial Dist. Ct. of State of Nev. ex rel.
24  Cnty. of Clark, 134 P.3d 111, 116-17 (Nev. 2006); Consol. Generator–Nevada, Inc. v.
25  Cummins Engine Co., 971 P.2d 1251, 1253-54 (Nev. 1998). Taking the allegations in the
26  Complaint as true, LPI solicited customers and "enter[ed] into contracts . . . within this

3

District," and LPI marketed the settlements "throughout the United States, including Nevada." (Compl. at 10 ¶¶ 81, 86.) Sixty-eight of the eighty-three Plaintiffs are Nevada residents. No Plaintiff is a Texas resident. Although LPI and LPHI are Texas companies, LPI used Dr. Cassidy, a Nevada physician, to produce the life expectancy projections. Nevada statutorily has expressed a strong public policy in favor of protecting its citizens from the fraudulent or misleading advertisement or sale of viatical settlements in the State. See Nev. Rev. Stat. Ch. 688C. Additionally, taking the facts and all reasonable inferences therefrom as true, most Plaintiffs received the alleged misrepresentations in Nevada and would feel the harm in Nevada. The Court therefore will apply Nevada law to the Agency Agreements and the tort claims, without prejudice to revisit the choice of law question at a later stage in the proceedings.

### D. Unjust Enrichment

As no one appears to be challenging the valid and binding nature of the contracts, the Court will dismiss the unjust enrichment claim, without prejudice to renew if the validity of the contracts later becomes open to dispute. To the extent Plaintiffs seek rescission, that is a remedy that will not require a separate unjust enrichment claim.

### E. Statute of Limitations

It is not clear from the face of the Complaint that Plaintiffs' claims are barred by the applicable statutes of limitations as a matter of law because Nevada recognizes the discovery rule. See Siragusa v. Brown, 971 P.2d 801, 807, 812 (Nev. 1998). Taking the Complaint's allegations and all reasonable inferences therefrom as true, the Court cannot say as a matter of law that Plaintiffs would have known upon signing the Agreements that LPI would use life expectancy projections which LPI knew would not meet the contractual criteria for investment over ninety percent of the time, would not use an independent physician, or would advertise a misleading average rate of return. Unlike the plaintiff in Bentley v. Mutual Benefits Corp., 253 Fed. Appx. 358 (5th Cir. 2007), Plaintiffs do not

4

allege they were guaranteed a certain rate of return which was contrary to the Agreements' plain terms.  Rather, Plaintiffs contend Defendants misrepresented and concealed material facts regarding the investment.  Plaintiffs need not anticipate a federal defense and allege facts supporting the discovery rule in their Complaint.  See Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012); Turner v. Lundquist, 377 F.2d 44, 48 (9th Cir. 1967); Siragusa, 971 P.2d at 807 n.6; Fed. R. Civ. P. 8(a), (c).

However, in paragraph 124 of the Complaint, Plaintiffs allege that "in some cases, LPI failed to disclose and/or deliberately withheld information from investors regarding the fact that investors would be required to pay the underlying life insurance policy premiums if the terminally-ill person lived beyond LPI's projected life expectancy." Plaintiffs also allege Defendants failed to identify the amount or frequency of such additional investments.  (Compl. at ¶ 126.)  However, the Funding Agreements warn that the purchaser "may be required to contribute additional amounts to escrow account in the event the amount retained for payment of premiums is exhausted."  (See, e.g., Defs.' Mot. to Dismiss (Doc. #47), Ex. 1 at LPI00010.)  Consequently, any Plaintiff who signed a Funding Agreement would know upon signing it that they were required to contribute additional funds if necessary.  Additionally, a signatory to the Funding Agreement would know that the amount or frequency of any such additional contribution was not disclosed.  Consequently, to the extent Plaintiffs' claims are based on an alleged failure to advise purchasers that additional investments may be necessary, those claims accrued upon a Plaintiff executing a Funding Agreement containing this language.

The Court therefore will deny Defendants' Motion on the basis of the statute of limitations.  However, any claim based on paragraph 124 of the Complaint accrued upon the date any particular Plaintiff signed a Funding Agreement which advised the investor he or she may have to contribute additional funds.

///

**F. Failure to State a Claim**

1.  Breach of Contract/Good Faith and Fair Dealing

Taking Plaintiffs' allegations and all reasonable inferences therefrom as true, Plaintiffs adequately have alleged LPI breached the contracts and the covenant of good faith and fair dealing[1] by using Dr. Cassidy's projections to include investments within the contractual criteria despite knowing Dr. Cassidy was inaccurate over ninety percent of the time.  Additionally, Plaintiffs have alleged LPI failed to consult an independent physician as contractually required, instead using Dr. Cassidy whom LPI paid in such a fashion as to incentivize Dr. Cassidy to underestimate life expectancies.  The Court therefore will deny Defendants' Motion to dismiss the breach of contract and good faith and fair dealing claims.

2.  Failure to Plead Fraud with Particularity

Plaintiffs adequately pled their fraud-based claims with the requisite particularity. See Fed. R. Civ. P. 9(b).  The only affirmative misrepresentation alleged is the advertisement, which Plaintiffs attached to their Complaint.  Plaintiffs identify LPI as the source of the alleged misleading advertisement, and identify LPI as the entity which failed to inform Plaintiffs of material information relating to the investments in the course of selling viatical settlement investments to Plaintiffs.

According to the Complaint, Defendants affirmatively misrepresented the rate of return by failing to include in that calculation investments where the viator outlived the life expectancy projection.  Plaintiffs also allege Defendants knowingly used inaccurate

---

[1] Defendants contend Texas does not imply the covenant of good faith and fair dealing into every contract.  However, Texas law implies such a covenant "when a special relationship exists between the parties such as insurers and insured, principal and agent, joint venturers, and partners." Childers v. Pumping Sys., Inc., 968 F.2d 565, 568 (5th Cir. 1992) (applying Texas law). As Plaintiffs allege LPI acted as Plaintiffs' agent, Plaintiffs adequately have alleged breach of the covenant of good faith and fair dealing regardless of whether Texas or Nevada law applies.

projections from a doctor who was not independent, but Defendants failed to inform Plaintiffs of these facts.  According to the Complaint, these omissions were material because the criteria for a suitable investment included a life expectancy of six to forty-eight months with the projection obtained from an independent physician.  Viatical settlements with a shorter life expectancy are more valuable and demand a higher price, and the accuracy of life expectancy projections will affect the return on the investment.  Consequently, information that the life expectancy projections are regularly inaccurate and/or obtained from a physician who had financial incentives to underestimate life expectancies would be material information a reasonable investor would want to know in evaluating whether any particular viatical settlement was a good investment.  The Court therefore will deny Defendants' Motion to dismiss the fraud-based claims for failure to plead with particularity.

### 3.  Chapter 688C

Defendants' assertion that there is no private right of action under Chapter 688C or that Plaintiffs have failed to allege statutory timeliness prerequisites for rescission are meritless.  See Nev. Rev. Stat. § 688C.510(2)-(3).  The Court therefore will deny Defendants' Motion as to Plaintiffs' Chapter 688C claims.

**G.  Transfer**

To the extent Defendants request the Court transfer this case to the federal district embracing the state court in Texas where these parties currently are engaged in a separate lawsuit, Defendants have not met their burden that transfer is appropriate under 28 U.S.C. § 1404(a).  See In re Apple, Inc., 602 F.3d 909, 913 (9th Cir. 2010); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

Taking the allegations in the Complaint and all reasonable inferences therefrom as true, the settlements were advertised to Plaintiffs largely in Nevada, and they were negotiated and executed largely in Nevada.  Because Nevada law governs most claims, at

least at this stage of the proceedings, this Court is most familiar with the governing law. This district also is Plaintiffs' choice of forum. In addition to the large number of Plaintiffs with contacts in Nevada, LPI marketed and sold viatical settlements in Nevada and the claims are based on LPI's marketing and sale of those investments within Nevada. All of these factors weigh against transfer. The availability of compulsory process to compel attendance of unwilling non-party witnesses also weighs against transfer, as Texas may have difficulty securing Dr. Cassidy's attendance. According to the Complaint, Dr. Cassidy is a Reno physician, and therefore within the District of Nevada.

Ease of access to sources of proof is a neutral factor in this case. Defendants are located in Texas and a substantial portion of their conduct likely occurred in that state. Consequently, some witnesses and documentary evidence likely would be located in Texas. But, according to the Complaint, a substantial portion of the marketing occurred in Nevada, most Plaintiffs are located in Nevada, and Dr. Cassidy and his records are located in Nevada. Thus, witnesses and documentary evidence also are located in Nevada.

The only factors which weigh in favor of transfer are the difference in cost and the forum selection clause in the Funding Agreements. The parties already are litigating against each other in Texas, and at least some Plaintiffs will have to travel out of state no matter which forum ultimately is selected. But the costs savings may not be that significant, as the two actions will not be consolidated, with one in federal court and the other in state court. Although the forum selection clause in the Funding Agreements weighs in favor of transfer, Nevada's public policy reflected in Chapter 688C is a countervailing factor that weighs against transfer.

Most of the factors do not favor transfer. Defendants therefore have not met their burden of showing transfer is appropriate, and the Court will deny the motion to transfer. The Court also will deny a stay of the proceedings pending the outcome of the Texas litigation. Defendants have not established that the proceedings in Texas would resolve all

issues in the present litigation.  Additionally, at the hearing in this matter, the parties represented that the Texas litigation may be approaching an end.  The parties may litigate in this Court the impact any final ruling in the Texas action has on this case, but the Court will not stay this case pending resolution of the matter in Texas state court.

**III. CONCLUSION**

       IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. #47) is hereby GRANTED in part and DENIED in part.  The Motion is granted with respect to Defendant Lifetime Partners Holdings, Inc. on all counts, without prejudice to amend as to the tort-based claims.  The Motion is granted as to Plaintiffs' unjust enrichment claim, without prejudice to renew the claim should the validity of the contracts be called into question.  The Motion is denied in all other respects.

DATED: October 26, 2012

                                            PHILIP M. PRO
                                            United States District Judge